By the Court.
Sandeord, J.
The plaintiff relies entirely on the case of Campbell v. Mesier, (4 John. Ch. R. 334, and 6 Ibid. 21,) to sustain this suit. It was there decided, that where there was an old party wall standing between two houses, which had become ruinous, and the owner of one of the houses being desirous to rebuild his house, after notice to the owner of the other, and a request to him to unite in the work, took down the old wall and rebuilt it on the same site, with and for his new house, the owner of the adjoining house was bound to contribute ratably to the expense' of the new wall; but not beyond the extent of the height and quality of the old wall. It was in effect held also, when the case was before the chancellor on the equity reserved in 6 J. C. R. 21, that a purchaser of the hóuse from the owner thus liable, took it subject to the charge upon it for contribution. But we suppose this was on the ground that the purchaser was aware of the claim of his neighbor for contribution when he purchased, as was apparent from his taking a covenant of indemnity in respect of the use of the party wall, in his deed of the house.
We think this case differs from Campbell v. Mesier, so far that the decision of the latter is not controlling. In the first place, the defendant bought his lot with the new wall upon it, without notice of the plaintiff’s claim. Next, when the wall in question was built by the plaintiff, there was no party wall in existence. There had been a wall, which served as a partition between the two stores, (whether properly called a party wall or not, in the sense used by the chancellor in the case cited, we will not here inquire,) but it was destroyed with those stores. The stone foundation that remained does not alter the matter. Either party could remove so much of it as *486 rested on his ground, with the rubbish on his lot, on preparing to rebuild. Then the plaintiff on one side, and the mortgagees on the other, Duryee’s heirs really having no interest in the subject, owned two adjoining vacant lots in severalty, where there had once been a partition wall forming the mutual support of two adjoining buildings. The plaintiff, without notice to the mortgagees, and without their assent or knowledge, rebuilt her store, and placed the partition wall on the site of the former one. There was no “ equality of right and interest” in an existing wall, which it was necessary, for the two houses then supported by it, should be rebuilt, and in which wall the parties “ had an equal interest,” as was the chancellor’s view of the facts in Campbell v. Mesier. These parties had no such interest, for they had no joint or common interest whatever. Each owned in severalty the half of the ground on which the former wall stood. Neither was under any obligation or duty to build upon his lot, or to suffer the other party to place part of a division wall upon it. The principle of contribution applicable to tenants in common of a mill, and to the discharge of a common burthen or charge upon lands held in common, is therefore not applicable to this case; and we think it is not governed by the principle of the chancellor’s decision in the authority relied upon by the plaintiff.
By the common law, every owner of land is his own judge of the propriety of building upon .it or leaving it vacant; and when he does build, of the manner and extent of his buildings. In the absence of statutory provisions, he may build with what material he pleases, and he is under no obligation to give to his neighbor any use or advantage of his land, by way of support, drip, or easement of any description. If a stranger dispossess him, or enter upon his unoccupied property, erect buildings, and make valuable permanent improvements upon it; he is not under the slightest obligation to recompense such stranger for any portion of the expense, on recovering the possession of the land. So unyielding is this doctrine, that a mortgagee in possession will not be allowed, on redemption by the mortgagor, for the expense of clearing up unproductive wild lands mort *487 gaged, (Moore v. Cable, 1 J. C. R. 885,) and where a vendor breaks off a contract of sale, the vendee cannot recover for his improvements made on the lands sold, while in possession under the contract. (Gillet v. Maynard, 5 John. R. 85.) Whether the entry were tortious, or in the most perfect good faith, the common law is uniform in refusing to permit the real owner of the land to be benefited without his own request or sanction. And if one, having made valuable erections on the land of another, while in possession under a claim of title, remove the buildings from the land before the owner recovers possession, he is liable in trespass for their value. (Dewey v. Osborn, 4. Cowen, 329 ; and see Erwin v. Olmsted, 7 Ibid. 229.) The rule allowing defendants in ejectment, in a suit against them for mesne profits, to retain, in diminution of the recovery, the value of permanent improvements made in good faith, does not trench* at all upon this principle. (Jackson v. Loomis, 4 Cowen, 168; Van Alen v. Rogers, 1 John. Cas. 281.) That action is one for damages administered on equitable principles, and justly limited to the injury actually sustained.
We perceive no ground upon which the plaintiff can maintain her suit, that will not give a like remedy for all permanent valuable erections made in good faith,- by all persons on lands-which they do not own. It was argued that the fact of there having formerly been a partition wall, (which we will call a party wall,) gives the right to have it continued for all time to come. To test this argument fairly, we will assume what is not proved, but may, perhaps, be fairly inferred, that the old wajl was built by the mutual agreement; and at the joint expense, of the then proprietors of the two lots. It is not disputed that each proprietor remained the owner in severalty of the ground-on which half of the wall rested, and of course each owned in severalty one half of the wall. Neither party had a right to pull down the wall without the other’s consent; and to that extent, the agreement upon which it was erected controlled the exclusive dominion which each would otherwise have had over the half of the wall, as well as over the soil on which it stood.The case of Campbell v. Mesier, it may be said, is an authority *488 that each was bound to keep the wall good on its falling into decay; but that case proceeded upon the footing that each had an equal interest in the party wall, of the same nature as that of tenants in common,’ and the fact here is clearly otherwise.
The parties being confessedly restrained from destroying the wall without mutual consent, how is it when the wall has been -destroyed by the elements? The lands on each side are vacant. The agreement upon which the party wall was built related to that wall only. There was no agreement to build a second wall, or to build houses a second time, in the event that the original wall, and the houses which it supported, should be destroyed. Neither party, perhaps, thought of such an event. If they had, it by no means follows they would at that time have stipulated for a second joint wall. It might well have occurred to them, that if the buildings were destroyed, one or the other might not wish to rebuild; or that one might desire to erect a very strong warehouse for heavy goods, requiring thick walls, and the other a private dwelling, with a wall only half as thick. But without pursuing the views which parties may well be supposed to entertain, on their attention being called to the event of a total destruction of the building they are about to erect on a party wall, it suffices to say, that when two owners of adjoining city lots unite in building two stores with a party wall, we have no right to infer, from that act, an agreement binding upon them and their heirs and assigns. 'to the end of time, to erect another like party wall at their mutual expense, when that one is casually destroyed, and so on, as often as the new one shares the same fate.
Suppose in this case that the foreclosure of Duryee’s mortgages had terminated, and the defendant had purchased the Duryee lot, before the plaintiff commenced rebuilding her store. If the doctrine contended for in her behalf be correct, she could have compelled the defendant to join in building a new party wall, or on his refusal, built it herself, and recovered from, him half the expense. Suppose the defendant had said, on being requested to join in the party wall, I bought this lot at a public sale, without notice of any such right as you claim, *489 and my recorded title shows nothing of the kind. Would not this have been a conclusive answer to the request ? Suppose further, that on the plaintiff’s assuming to build the new party wall, the defendant had forbidden her placing any part of it on his land. Could he not have maintained trespass every day against her workmen while building it, and when finished, could he not by an ejectment have compelled her to take it down ? It seems to us these questions must be answered in the affirmative, and that the result overthrows entirely the claim of right based upon the former party wall.
But it is said the defendant made use of the new wall when he built on his lot, and thus ratifiéd it as a party wall; and' it will be unjust to permit him to have the benefit of it without making compensation.
As to the injustice alleged, it is very well answered that the defendant bought this lot at a judicial sale; and, so far as we know, paid for it all that it was worth, including the half wall then standing upon it, and a judgment in this suit compelling him to pay the plaintiff for the same half, will make him pay for it twice. But whether that be the result of our decision, of it have the effect to give him the half of the wall for nothing, it cannot change the rule of law which governs the case. )
Then what is the effect of his using the party wall ? He found it on his land, on taking possession. He wanted to build. Was he to tear it down, or insist on the plaintiff’s removing the half wall, so that he could occupy his whole land ? This he might have done, (Wigford v. Gill, Cro. Eliz. 269,) to her great injury, and with probably no advantage to himself. Or was he not entirely at liberty to use as his own, an erection on the land he had bought, without subjecting himself to pay for work done without his request or knowledge. We think he was. We do not see how the defendant is liable to pay for half of this wall, because he used it, any more than he would have been liable, if the Duryees had rebuilt before he bought, and had put their beams into the wall, without paying the plaintiff for it. Yet the proposition would be at once scouted, that the purchaser of a house in this city, having paid to the *490 ■owner the price, in good faith and without notice, would be liable to the owner of an adjoining house, for the unpaid half of the cost of the party wall which separated the two tenements.
We think we have shown that this case is not governed by Campbell v. Mesier, whether regarded as arising between the mortgagees of Duryee’s lot and the plaintiff, or between her and the defendant. We will next consider the plaintiff’s point, that successive owners of city lots, situated as these were, are bound to rebuild party walls when destroyed, because of an equitable liability founded on a duty arising from the fact that the parties are at least quasi tenants in common of such party walls. This idea of quasi tenancy in common comes from the civil law, and we think has no foothold in our law. It is true, we find two cases in England, in which it was held that coim mon user of a wall separating adjoining houses belonging to different owners, is prima facie evidence, that the wall and the land on which it stands belong to the owners of those houses in equal moieties, not as quasi, but as actual tenants in common. (Wiltshire v. Sidford, 1 Man. & R. 404; Cubitt v. Porter, 8 Barn. & Cr. 257.)
But it was decided in Matt v. Hawkins, 5 Taunt. 20, that although a party wall be erected at the joint expense of the two proprietors of the lots on either side, one half of the thickness of it standing on the land of each, they are not therefore tenants in common of the wall or of the land on which it stands. The property in the wall in-such a case, follows the property of the land which supports it. This, it should be observed, was in London, after the passage of the building act, 14 Geo. III., ch. 78, which regulates the subject of party walls; and its authority was fully recognized in both the cases in the King’s Bench last cited. (The principle of the decisions is, that while the common user is presumptive evidence of a tenancy in common in the land and wall, that presumption is rebutted by proof of the precise extent of the land originally belonging to each owner, and each is then deemed the exclusive owner of so much of the wall as stands on his own land.) (Gale & Whatley on Ease1 *491 ments, 296.) We also refer to Peyton v. Mayor, &c., of London, 9 B. & Cr. 725.
The Roman law contained numerous refined and minute regulations respecting prsedial servitudes, both rural and urban, which are unknown to the common law; and among the number are most of those respecting party walls. (Digest Lib. 8, Tit. 2, 1. 13, 19, 20, 25, 32, 33, 36, 40.) These are also made the subject of many provisions in the French law. (Code Civil Francais, Liv. 2, Tit. 4.) The second chapter of the code civil, which contains the sections cited by the learned chancellor, in Campbell v. Mesier, is entitled “ Of servitudes established by law,” as distinguished from those derived from the situation of places. Among these positive enactments is one which gives to each joint proprietor the right to place beams in the whole thickness of the wall, within two inches (cinquante-quatre millimetres) of the opposite side, (§ 657,) which is very different from our notions of the use of a party wall. It may well be that sound policy dictates similar legislation in this state, but we do not feel at liberty to import doctrines from the civil law, however benign or equitable, which conflict with established common law principles.
In Pennsylvania, the subject of party walls in the city of Philadelphia, was regulated by statute, one hundred and thirty years ago. (1 Laws of Penn. ch. 242, p. 124, &c.; Act of 1721.) -By that statute, the foundation, breadth, thickness, &c., were to be prescribed by the city surveyors, or regulators; and the same officers determined the' compensation to be paid by the builder on the adjoining lot, on his inserting his beams. These matters were not left to the unregulated judgment of experts and witnesses called by the parties interested, as would be the case in our law, if the plaintiff’s view of it be sustained. The act provided expressly, that the first builder should be reimbursed one moiety of the wall, or of so much of it as the next builder should use; but it was decided in Ingles v. Bringhurst, 1 Dali. 341, that the first builder had no lien for this reimbursement, upon the adjoining land; and that it was only a personal charge against the next builder.
*492 The provision in the act of 1813, and the ordinances of the common council of the city of New York under the same, to which we w.ere referred by the plaintiff’s counsel, do not apply to party walls. They relate to walls and fences separating inclosures. The statute itself speaks of fences only. (2 R. L. 134, § 20; Corporation Ordinances, 1845, ch. 43.)
Upon the whole, we are clear that the plaintiff is not entitled to recover, and her bill must be dismissed with costs.